UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

        Plaintiff,

v.

BAE SYSTEMS TACTICAL VEHICLE
SYSTEMS, LP,

        Defendant.

Case No. 15-12225

Honorable Nancy G. Edmunds

_____/

**OPINION AND ORDER GRANTING IN PART AND DENYING IN PART
DEFENDANT'S MOTION TO DISMISS [9]**

      The United States brings suit against Defendant BAE Systems Tactical Vehicle

Systems, LP, alleging violations of the False Claims Act (FCA) and the Truth-in-

Negotiations Act (TINA), breach of contract, unjust enrichment, and payment by mistake.

This matter comes before the Court on Defendant's motion to dismiss the first amended

complaint. For the reasons stated herein, the court GRANTS Defendant's motion to dismiss

Count III[1] and DENIES the motion in all other respects.

## I.    FACTS

      In 2008, the Army entered into a contract with Defendant to purchase a fleet of 20,000

military vehicles, known as the Family of Medium Tactical Vehicles. (Dkt. 3, at ¶¶ 10, 21-

27.) The contract was awarded to Defendant as an undefinitized contract action on May 30,

2008. (*Id.* at ¶ 27.) An undefinitized contract is one that is awarded prior to agreeing on a

---

    [1] The government agrees to dismiss Count III in light of the fact that all claims for payment at issue were submitted by Defendant after June 7, 2008, and therefore the section of the FCA invoked in Count III is inapplicable. (Dkt. 18, at 9 n.1.)

price. (*Id.*) After the award of the contract, the parties entered into price negotiations. (*Id.*) Pursuant to requirements in the contract, TINA, and the Federal Acquisition Regulation (FAR), Defendant was obligated to provide the government accurate, complete, and current information regarding its expected costs for parts and labor. (*Id.* at ¶ 17.)

Defendant submitted a "Bill of Materials" (BOM) sometime before July 30, 2008, containing a list of costs, prices, and quantities for parts and materials needed. (*Id.* at ¶ 28.) On September 4, 2008, the government requested Defendant conduct a "sweep" of its proposed prices and confirm that the cost and pricing data disclosed was accurate, complete, and current, as required. (*Id.* at ¶ 33.) On September 11, the government states the parties agreed to a revised BOM, which continued to be updated as the pricing for individual parts was discussed. (*Id.* at ¶¶ 34-35.) On September 25, 2008, Defendant emailed the government: "Sweep is complete." (*Id.* at ¶ 44.) In a letter dated September 25, Defendant's chief negotiator, Melvin Thornhill, stated, "[a]fter completion of the sweep, current material cost now equal $1,542,962,510." (*Id.* at ¶ 45.) This amount was approximately $16 million higher than the last negotiated price. (*Id.*) Mr. Thornhill continued, "[h]owever, ... [Defendant] will honor [] all agreed upon material costs and final pricing." (Dkt. 19-2, at 3.) Defendant also provided a Certificate of Current Cost or Pricing Data, signed by Mr. Thornhill and dated September 24, 2008. (Dkt. 9-4.) This document certified that "to the best of [the signatory's] knowledge and belief, the cost or pricing data ... submitted ... is accurate, complete, and current as of 04 September 2008." (*Id.*) The parties agreed on a price of $2,099,328,517 for 10,000 vehicles and support, with an option to buy an additional 10,000 vehicles for $1,666,884,022. (Dkt. 3, at ¶ 21.)

The government filed its first amended complaint on October 1, 2015. (Dkt. 3.) The complaint alleges Defendant "knowingly failed to meet its obligation" to provide "cost or pricing data that was accurate, complete, and current." (*Id.* at ¶ 49.) The government states it relied on the material costs provided, as well as Defendant's statements that the data was accurate, complete, and current, in reaching agreement with Defendant as to a final price. (*Id.* at ¶¶ 46-48.) The government contends it "would not have agreed" to the final price had Defendant "disclosed accurate, complete, and current cost or pricing data," as required. (*Id.* at ¶ 82.) The government argues, "[e]ach of [Defendant]'s claims for payment was therefore inflated" and the "inclusion of those inflated prices makes the claims false or fraudulent under the FCA." (*Id.*)

Defendant seeks dismissal of the FCA Counts pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to satisfy the pleading requirements of Rules 8 and 9. Defendant argues the remaining claims should also be dismissed because without a valid claim for fraud, the Armed Services Board of Contract Appeals (ASBCA) maintains exclusive jurisdiction for such claims under the Contract Disputes Act.[2] Finally, Defendant contends the existing contract between the parties bars the government's quasi-contract claims for payment by mistake and unjust enrichment.

## II.   STANDARD

A motion to dismiss pursuant to Rule 12(b)(6) tests the sufficiency of a complaint. The court must, in a light most favorable to the plaintiff, assume the plaintiff's factual allegations

---

[2] According to the pleadings, the government demanded a contract price reduction for alleged defective cost or pricing data under TINA in July 2014. (Dkt. 9, at 16.) In August 2014, Defendant filed an appeal with the ASBCA, which is presently pending. (*Id.* at 17.)

are true and determine whether the complaint states a valid claim for relief. *See Bower v. Fed. Express Corp.*, 96 F.3d 200, 203 (6th Cir. 1996). To survive a Rule 12(b)(6) motion to dismiss, the complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). To survive a motion to dismiss, the complaint must contain sufficient factual matter, taken as true, to state a claim for relief that is plausible on its face. *Id.*

## III.   ANALYSIS

### A.   False Claims Act

The sections of the FCA invoked in the complaint impose liability on any person who "knowingly presents, or causes to be presented, a false or fraudulent claim for payment or approval" to the government, or who "knowingly makes, uses, or causes to be made or used, a false record or statement material to a false or fraudulent claim." 31 U.S.C. § 3729(a)(1)(A)-(B). In enacting the FCA, "Congress wrote expansively, meaning to reach all types of fraud, without qualification, that might result in financial loss to the Government." *Cook County, Ill. v. United States ex rel. Chandler*, 538 U.S. 119, 129 (2003) (internal quotation omitted). Defendant argues the FCA Counts should be dismissed for failure to comply with the pleading requirements of Rules 8(a)(2) and 9(b).

### 1.   Rule 8(a)(2)

Under Rule 8(a)(2), a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Defendant contends the complaint fails this basic pleading standard because it contains only conclusory

4

assertions that Defendant acted "knowingly" and submitted "false" claims or records. Defendant argues the allegations are merely a "formulaic recitation of the elements" of the cause of action and fail to state a claim under *Twombly*. The Court considers the adequacy of the government's allegations with regard to both knowledge and falsity.

### a.  Knowledge

Defendant argues the allegations that Defendant acted "knowingly" are conclusory and thus insufficient. A person acts "knowingly" under the FCA when he or she "has actual knowledge of the information," or "acts in deliberate ignorance" or "reckless disregard" of the truth or falsity of the information. 31 U.S.C. § 3729(b)(1). Even under the heightened pleading standard of Rule 9(b), however, a plaintiff may generally allege that the defendant acted "knowingly." *See Chesbrough v. VPA, P.C.,* 655 F.3d 461, 466 (6th Cir. 2011) ("Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally."). The Court finds the government has adequately pleaded that Defendant acted knowingly. Indeed, the complaint alleges Defendant acted knowingly in numerous paragraphs. (*E.g.*, Dkt. 3, at ¶¶ 49, 51, 53, 56, 58, 64, 70, 84, 86.). For example, the government alleges Defendant "prepared a final updated BOM of material costs" but did not disclose these costs to the government because Defendant "knew that these costs could significantly affect price negotiations ... but did not want the lower prices to depress the price of the Contract." (*Id.* at ¶¶ 43, 56.) The government alleges further that Defendant "certif[ied] that its cost or pricing data was accurate, complete, and current when it knew

that it was defective." (*Id.* at ¶ 86.) Viewing the complaint in the light most favorable to the government, the government has sufficiently alleged knowledge.[3]

### b. Falsity

Defendant also argues the complaint fails to plausibly allege that the claims for payment were false. (Dkt. 9, at 20-28.) Although the government takes issue with "judicially created" theories of falsity, it nonetheless works within such theories to argue it has adequately pleaded falsity under either a fraudulent inducement or a false certification theory. (Dkt. 18, at 15-32.) Viewing the complaint in the light most favorable to the government, the Court finds the government has adequately pleaded falsity under a fraudulent inducement theory.[4]

FCA liability exists under a fraudulent inducement theory when a government contract is obtained "through false statements or fraudulent conduct." *Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 787 (4th Cir. 1999). *See also United States v. United Techs. Corp.*, 626 F.3d 313, 320 (6th Cir. 2010), *as amended* (Jan. 24, 2011) (affirming finding of FCA liability where false cost data provided during negotiations "had the potential to influence the government's decision to sign the contract"). Once fraudulent inducement

---

[3] In its reply brief, Defendant also argues that the allegation that it "knowingly concealed cost and pricing data" is implausible because its September 25 letter disclosed a $10 million *decrease* from the cost previously disclosed. (Dkt. 19, at 10-12.) But the government has alleged Defendant knowingly failed to disclosed purchase orders, vendor quotations, and labor rates that would have resulted in a reduction of the contract price by at least $44 million. (Dkt. 3, at ¶¶ 58, 63, 64, 69, 70, 74, 81.) As such, even if the Court agreed that the September 25 letter disclosed an overall decrease in material costs by $10 million, the government has adequately alleged that Defendant knowingly concealed additional cost and pricing data sufficient to survive a motion to dismiss.

[4] The Court thus need not address the false certification theory.

6

is shown, the original fraud renders all subsequent claims for payment false and actionable under the FCA. *United States ex rel. Marcus v. Hess*, 317 U.S. 537, 543 (1943).

To plead an FCA claim under a fraudulent inducement theory of liability, a plaintiff generally must allege (1) that there was a false statement or fraudulent course of conduct; (2) made or carried out with the requisite scienter; (3) that was material; and (4) that caused the government to pay out money or to forfeit moneys due. *Harrison*, 176 F.3d at 788. Taking the well-pleaded allegations as true, the Court finds the government has adequately pleaded its FCA claims under a fraudulent inducement theory of liability. The government alleges Defendant knowingly concealed cost or pricing data during negotiations and on September 24, 2008, certified that such data was accurate, complete, and current even though Defendant "knew that its disclosure of the data was, in fact, not accurate, complete, and current." (*E.g.*, Dkt. 3, at ¶¶ 46-55, 85.) The government also pleads that such data was material—*i.e.*, that it had the "objective, natural tendency to influence a government decision maker." *United Techs. Corp.*, 626 F.3d at 321. That is, the government alleges it "relied on [Defendant's] cost or pricing data to be accurate, complete, and current" and "would not have agreed" to the price absent Defendant's failure to comply with its obligation to provide accurate, complete, and current data and false certification of the same. (*E.g.*, Dkt. 3, at ¶¶ 57, 82.) As a result, the government alleges, it "paid inflated prices for vehicles under the Contract, and the United States was damaged thereby." (*Id.* at ¶ 86.) These allegations are sufficient to survive a Rule 12(b)(6) motion to dismiss. *See, e.g.*, *United States ex rel. Shemesh v. CA, Inc.*, 89 F. Supp. 3d 36, 46-49 (D.D.C. 2015) (denying in part motion to dismiss FCA claims where defendant allegedly provided price lists containing false information in order to induce the government to enter into contracts);

7

*United States ex rel. Woodlee v. Sci. Applications Int'l. Corp.*, No. SA-02-CA-028-WWJ, 2005 WL 729684, at *2-4 (W.D. Tex. Feb. 4, 2005) (denying motion to dismiss FCA claims where defendant allegedly failed to disclose accurate, complete and current cost and pricing data during negotiations). Because under a fraudulent inducement theory all subsequent claims for payment are false and actionable, the Court finds the government has adequately pleaded the falsity of the claims for payment made by Defendant, representative examples of which are pleaded in the complaint. (Dkt. 3, at ¶¶ 90-133.)

Defendant argues the fraudulent inducement theory must fail because the government has not alleged that the initial contract (awarded in May 2008) was procured by fraud. (Dkt. 9, at 27 n.9.) The Court does not find this argument availing. As Defendant admits, the September price agreement was a modification of the Contract. (*See, e.g.*, Dkt. 19, at 16-17 (referring to the "price modification").) The fraudulent inducement theory may apply not only when fraud is used to obtain a contract, but also when used to obtain sub-contracts or modifications to contracts. *See, e.g.*, *United States ex rel. Frascella v. Oracle Corp.*, 751 F. Supp. 2d 842, 855 (E.D. Va. 2010) (FCA claim sufficiently pleaded where false statements were made "with the intent to induce [the government] to enter into contract modifications")*; Woodlee*, 2005 WL 729684, at *1-2 (master contract awarded prior to individual delivery orders, the negotiations of which were the basis of the FCA fraudulent inducement claims). The Court finds the government has sufficiently pleaded falsity.

### 2. Rule 9(b)

Defendant also seeks to dismiss the FCA Counts under Rule 9(b). Claims brought pursuant to the FCA must comply with the heightened pleading standards set forth in Rule 9(b). *See United States ex rel. Blesdoe v. Cmty. Health Sys., Inc.*, 342 F.3d 634, 641 (6th

Cir. 2003). Rule 9(b) requires that the circumstances constituting fraud or mistake be stated with particularity. Fed. R. Civ. P. 9(b). To satisfy Rule 9(b), a plaintiff must set forth "the time, place, and content of the alleged misrepresentation on which he or she relied; the fraudulent scheme; the fraudulent intent of the defendants; and the injury resulting from the fraud." *Blesdoe*, 342 F.3d at 643 (internal citation omitted). Stated differently, a plaintiff must allege the "who, what, when, where, and how of the alleged fraud." *Sanderson v. HCA-The Healthcare Co.*, 447 F.3d 873, 877 (6th Cir. 2006) (internal quotation omitted). Rule 9(b), however, "is not designed to force a plaintiff to prove [its] case in the complaint, but simply to give adequate notice to the defendants and ensure there is some basis for the allegations." *United States v. Assocs. in Eye Care, P.S.C.*, No. 13-27-GFVT, 2014 WL 414231, at *7 (E.D. Ky. Feb. 4, 2014). As such, Courts must analyze Rule 9(b) in conjunction with the "short and plain statement" pleading requirement of Rule 8. *See, e.g.*, *Michaels Bldg. Co. v. Ameritrust Co., N.A.*, 848 F.2d 674, 679 (6th Cir. 1988). Rule 9(b) also aims to prevent fishing expeditions, protect defendants' reputations against fraud allegations, and whittle down potentially wide-ranging discovery. *Thompson v. Bank of Am., N.A.*, 773 F.3d 741, 751 (6th Cir. 2014) (citing *Chesbrough*, 655 F.3d at 466-67).

The Court finds the government has adequately pleaded its FCA claims with the particularity required by Rule 9(b). The 55-page, 164-paragraph complaint sufficiently alleges the "who, what, where, when, and how" of the purported fraud. The "what" and the "how" have been discussed at length: the government alleges Defendant knowingly provided cost and pricing data during negotiations that was *not* accurate, complete, and current (as required), and falsely certified that such data *was* accurate, complete, and current. (*E.g.*, Dkt. 3, at ¶¶ 46-50.) For example, the government alleges Defendant

9

knowingly concealed vendor quotations for 40 parts (specified and itemized in the complaint) that were lower than the quotations disclosed. (*Id.* at ¶¶ 58-63.) By way of another example, the government alleges Defendant used undisclosed cost or pricing data to calculate the cost of fabricating over 200 parts (the "fab shop parts").[5] (*Id.* at ¶ 70.) The government claims it relied on the certification of the data as accurate, complete, and current, and agreed "to a higher Contract price" than it otherwise would have as a result. (*Id.* at ¶¶ 46, 82, 86.)

The "who, when, and where" are also alleged with sufficient particularity. For example, the government alleges that on September 24, 2008 ("when"), Defendant's chief negotiator, Mr. Thornhill ("who"), certified the cost and pricing data disclosed as accurate, complete, and current, even though Defendant knew that the data was defective. (Dkt. 3, at ¶¶ 46, 86.) The certification was sent by letter, with Defendant based in Sealy, Texas and Army Contracting Command located in Warren, Michigan ("where"). (*Id.* at ¶¶ 10, 45.) In sum, the Court finds the facts alleged are sufficient to enable Defendant to understand the allegations and prepare a responsive pleading, thus satisfying both the requirements and the underlying purpose of Rule 9(b).

**B.    Jurisdiction**

While in some cases the CDA divests the court of jurisdiction over disputes with the government, Defendant acknowledges that jurisdiction is not divested for claims involving fraud. (Dkt. 9, at 43 n.17.) Because the government has adequately pleaded fraud, the

---

[5] As alleged, the actual labor rates used to calculate the cost of the "fab shop parts" are "cost or pricing data" as defined by TINA. (Dkt. 3, at ¶ 71.)

Court will retain jurisdiction over the parties' remaining related claims. *See, e.g.*, *United States v. Rockwell Int'l Corp.*, 795 F. Supp. 1131, 1135-39 (N.D. Ga. 1992).

### C.   Unjust Enrichment and Payment by Mistake

Lastly, Defendant argues the express contract between the parties bars the government from pursuing the "quasi-contract claims" in Counts VII and VIII[6] (unjust enrichment and payment by mistake). (Dkt. 9, at 45-47.) While the government agrees *recovery* under both contract and quasi-contract claims would be barred, it argues it is not prohibited from pleading such alternative theories. (Dkt. 18, at 43-45.) At this stage, the Court agrees with the government.

As numerous courts within this district have held, a plaintiff may allege alternative theories of FCA violations and quasi-contractual claims, even when a contract between the parties exists. *See, e.g.*, *United States v. United Techs. Corp.*, No. C-3-99-093, 2000 WL 988238, at *4 (S.D. Ohio Mar. 20, 2000) ("Even though an express contract exists between the parties, the United States may plead, in the alternative, unjust enrichment, payment by mistake, and breach of contract, along with its claims under the False Claims Act, pursuant to Fed. R. Civ. P. 8(e)."); *United States ex rel. Roby v. Boeing Co.*, 184 F.R.D. 107, 112-13 (S.D. Ohio 1998) (denying motion to dismiss quasi-contractual claims even though an express contract existed between defendant and the government); *United States v. Stevens*, 605 F. Supp. 2d 863, 870 (W.D. Ky. 2008) (denying motion to dismiss alternative unjust enrichment claim as premature because the FCA claim had not been fully litigated). The Court finds it would be premature to dismiss such claims at this stage of the litigation.

---

[6] The eighth Count in the first amended complaint ("Payment by Mistake") is incorrectly labeled Count VII. (Dkt. 3, at 52.) The Court refers to it as Count VIII.

**IV.   CONCLUSION**

For the above-stated reasons, Defendant's motion to dismiss is DENIED as to

Counts I, II, and IV-VIII, and GRANTED as to Count III.

SO ORDERED.

S/Nancy G. Edmunds
Nancy G. Edmunds
United States District Judge

Dated:  March 9, 2016

I hereby certify that a copy of the foregoing document was served upon counsel of
record on March 9, 2016, by electronic and/or ordinary mail.

S/Carol J. Bethel
Case Manager