UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

        Plaintiff,

v.

BAE SYSTEMS TACTICAL VEHICLE
SYSTEMS, LP,

        Defendant.

_____/

Case No. 15-12225

Honorable Nancy G. Edmunds

## OPINION AND ORDER GRANTING DEFENDANT'S MOTION TO COMPEL [38, 39]

This opinion addresses a discovery dispute between Plaintiff United States of America (the Government) and Defendant BAE Systems Tactical Vehicle Systems (BAE). BAE has requested discovery related to the facts, conclusions, and analysis underlying the decision of United States Contracting Officer Lisa Jones to rescind the Army's demand for payment from BAE. The Government, which is pursuing this action on the Army's behalf, has refused to respond substantively to those requests, objecting on the bases of attorney-client privilege and work product doctrine. The Government argues that those protections apply because Ms. Jones rescinded the demand "in consultation with and based on information and advice provided by counsel[.]" (Dkt. 38-17, at 6.) Now BAE moves to compel the requested discovery, arguing that the Army's "strategic decision to conduct [its] review through counsel, and funnel the basis for the decision to the Contracting Officer through lawyers, does not shroud the Contracting Officer's conclusions or the underlying facts and analyses in attorney-client privilege or work product protection." (Dkt. 38, at 2.) For the reasons that follow, the motion to compel is GRANTED.

## I.  Background

This litigation arises out of a contract under which BAE agreed to provide trucks and trailers to the Army.  (Dkt. 3 at ¶ 21.)  The Government alleges that, during contract negotiations, BAE provided pricing information that falsely or fraudulently over-charged the Government.  (*Id.* at ¶ 3.)  BAE's alleged misrepresentations also led to a (now-rescinded) demand for payment by the Army, which in turn formed the basis of (now-dismissed) proceedings before the Armed Services Board of Contract Appeals (ASBCA).

The Army's pursuit of payment from BAE began after the Defense Contract Audit Agency (DCAA) finished auditing the contract.  The post-audit final report, which was issued on May 31, 2013, alleged generally that BAE provided cost or pricing data that was not accurate, complete, and current as of the date of price agreement.  (Dkt. 38-9, at 1.)  On June 11, 2014, Army Contracting Officer Timothy Nichols sent BAE a letter incorporating the allegations from that report and demanding approximately $56 million paid under the contract, plus interest.  (Dkt. 38-6.)  A month after that, Mr. Nichols issued a contracting officer's final decision reiterating the demand for payment.  (Dkt. 38-7.)

BAE then appealed the contracting officer's final decision, which initiated proceedings before the ASBCA.  During those proceedings, the Army was represented by attorneys from the Army Legal Services Agency, Contract & Fiscal Law Division (KFLD), and the parties engaged in extensive discovery.  (Dkt. 47-1, at ¶¶ 3-5.)  According to the Government, the record of discovery from those proceedings, also called the "Rule 4 File," comprises 260 exhibits, including contract and negotiation records, spreadsheets, audit reports, and some of the cost and pricing data at issue.  (Dkt. 47, at 3.)  The parties also conducted depositions and exchanged additional documents.  (*Id.*)

Meanwhile, as discovery in the ASBCA proceedings continued, the Government filed this action in June 2015 "on behalf of the Department of the Army, an agency of the United States, acting by and through the Contracting Officer for the Army Contracting Command." (Dkt. 3 at ¶ 9.)  The Amended Complaint alleges, *inter alia*, that BAE is liable under the False Claims Act (FCA) based on fraud, false claims for payment, and false statements. (*Id.* at ¶¶ 135-148.)  The FCA provisions invoked impose liability on any person who "knowingly presents, or causes to be presented, a false or fraudulent claim for payment or approval," or who "knowingly makes, uses, or causes to be made or used, a false record or statement material to a false or fraudulent claim."  31 U.S.C. § 3729(a)(1)(A)-(B).

Soon after this litigation began, the Army moved to stay the ASBCA proceedings until this case resolved.  (*See* Dkt. 38-10.)  The Army argued that a stay was appropriate primarily because litigating the same facts and legal issues in both forums could result in conflicting decisions.  (*See id.* at 2.)  The Army explained that the two matters involved "precisely the same facts," for they were "similarly rooted in the findings of the DCAA Audit of BAE's pricing, and involve[d] the same pricing proposal[,] BOMs [Bills of Materials,] and negotiations."  (*See id.* at 5-6.)  The only significant difference between the matters, the Army emphasized, was that the FCA requires the Government to prove that BAE acted "knowingly."  (*Id.* at 6.)  The ASBCA ultimately denied the request for a stay, finding that BAE was "entitled to our decision" on "whether the government has correctly claimed that BAE [] did not meet its contractual duty to disclose current, accurate, and complete cost or pricing data." (Dkt. 38-11, at 10.)  But the ASBCA acknowledged that "[b]oth parties agree that the facts relevant to both cases are nearly completely overlapping and that the two cases will require examination of common documents and witnesses[.]"  (*Id.* at 8.)

In October 2016, Ms. Jones replaced Mr. Nichols as the contracting officer assigned to the contract between the Army and BAE. Then, in what BAE calls "a telling and abrupt turn of events," Ms. Jones sent a letter to BAE on November 17, 2016 stating that the Army was "unequivocally and entirely" rescinding the previous contracting officer's demand letter and final decision. (Dkt. 38-12.) This letter also reported that "[t]he Government has no intention of issuing a new Final Decision" but elaborated no further. (*Id.*) The next day, the Army moved to dismiss the ASBCA action as moot because the contracting officer had rescinded the final decision underlying the appeal. (Dkt. 38-13.) The ASBCA granted the motion to dismiss. (Dkt. 38-14.)

Around the same time, BAE filed discovery requests in this action related to Ms. Jones' decision to rescind the demand letter and final decision. (Dkt. 38-16.) These included: (1) an interrogatory asking the Government to describe in detail the basis for Ms. Jones' decision, including the rationale for the rescission and all documents, facts, or information relied upon or related to the rescission; (2) a request for production of all documents used, reviewed, or relied on to respond to that interrogatory, or used, reviewed, relied on, or that related to Jones' decision; and (3) a deposition of Ms. Jones. (*Id.*)

The Government objected to these requests on the bases of attorney-client privilege and work product doctrine, explaining that Ms. Jones rescinded the demand "in consultation with and based on information and advice provided by counsel[.]" (Dkt. 38-17, at 6.) According to the Government, "KFLD selected for review and provided to Ms. Jones all of the factual evidence that she reviewed[.]" (Dkt. 47, at 4.) Ms. Jones has since corroborated that account, testifying that she did not review the underlying facts and relied on KFLD's assessment. (Dkt. 38-2, at 140:8-15; 141:7-11.) The materials that KFLD

4

assessed included the Rule 4 File and the discovery produced by both parties. (Dkt. 47-1 at ¶¶ 7-9.) Ms. Jones also received access to the "Trial Attorney Litigation File," but she does not recall whether she reviewed it. (Dkt. 38-2, at 111:13-112:14.)

Following further correspondence between the parties, the Government produced Ms. Jones for a deposition on January 25, 2017. (*Id.*) But the Government prevented Ms. Jones from testifying regarding her review of the facts, her conclusions, or her underlying reasons for rescinding the demand letter and final decision. Furthermore, the Government produced 838 documents, but 31 of these were redacted for privilege or protection. The Government also withheld 56 documents as allegedly privileged or protected. Now BAE moves to compel the Government to produce the requested discovery.[1] BAE requests in the alternative that, if the Court finds that privilege and work product protection must be determined on a communication-by-communication basis, the Court will conduct an in camera review of the documents withheld by the Government.

## II.  Applicable Standard

"The scope of discovery under the Federal Rules of Civil Procedure is traditionally quite broad." *Lewis v. ACB Business Servs., Inc.*, 135 F.3d 389, 402 (6th Cir. 1998). "Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case[.]" Fed. R. Civ. P. 26(b)(1). "Information within this scope of discovery need not be admissible in evidence to be discoverable." *Id.* A party may move to compel discovery if a deponent fails to

---

[1] BAE additionally requests in its Reply that the Court compel discovery that BAE sought after filing this motion. (*See* Dkt. 49, at 16-17.) The Court declines to address that request because the matter has not been sufficiently briefed.

answer a question asked under Rule 30 or 31; fails to answer an interrogatory submitted under Rule 33; or fails to produce documents requested under Rule 34. Fed. R. Civ. P. 37(a)(3)(B).

## III. Analysis

BAE argues that the Government has improperly invoked the attorney-client privilege and work product doctrine. For the reasons below, the Court agrees that neither protection applies to the discovery sought by BAE.

### A. The Attorney-Client Privilege Does Not Apply

The Government asserts attorney-client privilege over three categories of documents and information. First, it argues that it properly withheld materials documenting KFLD's assessment of the evidence in the ASBCA litigation, including the litigating attorney's review and assessment of the evidence. (Dkt. 47, at 9-10.) The Government maintains that these "discussions between litigator and client are classic examples of privileged material." (*Id.* at 10.) The second group of allegedly privileged materials consists of communications reflecting internal Army discussions about the assessment provided by KFLD. (*Id.* at 11.) Whether these materials are privileged depends on whether the assessment provided to Ms. Jones is privileged. Finally, the Government asserts privilege over materials that would reveal the content of allegedly privileged communications between the Army and KFLD. (*Id.* at 12.) For the reasons that follow, the Court finds that the attorney-client privilege does not protect the discovery sought by BAE.

The purpose of the attorney-client privilege is to foster frank and complete discussions between a client and his attorney. *Automated Sols. Corp. v. Paragon Data Sys., Inc.*, 756 F.3d 504, 517 (6th Cir. 2014). However, because the privilege reduces the amount of

information discoverable during the course of a lawsuit, claims of attorney-client privilege are narrowly construed. *In re Columbia/HCA Healthcare Corp. Billing Practices Litig.*, 293 F.3d 289, 294 (6th Cir. 2002) (citations omitted). The privilege applies only where necessary to achieve its purpose of encouraging clients to make full disclosures to their attorneys. *In re Grand Jury Subpoena*, 886 F.2d 135, 137 (6th Cir. 1989).

When the government is involved in civil litigation, it may claim the attorney-client privilege. *See Ross v. City of Memphis*, 423 F.3d 596, 603 (6th Cir. 2005) (explaining that "government entities are well-served by the privilege, which allows them to investigate potential wrongdoing more fully and, equally important, pursue remedial options"). To determine if the privilege applies, courts in the Sixth Circuit must consider the following:

> The elements of the attorney-client privilege are as follows: (1) Where legal advice of any kind is sought (2) from a professional legal adviser in his capacity as such, (3) the communications relating to that purpose, (4) made in confidence (5) by the client, (6) are at his instance permanently protected (7) from disclosure by himself or by the legal adviser, (8) unless the protection is waived.

*Reed v. Baxter*, 134 F.3d 351, 355-56 (6th Cir. 1998).

However, "the requirement that the communication be 'by the client' is not necessarily a literal one[.]" *Bailey v. Oakwood Healthcare, Inc.*, 2017 WL 427714, at *1 (E.D. Mich. Feb. 1, 2017). "[A]n attorney's communications to a client may also be protected by the privilege, to the extent that they are based on or contain confidential information provided by the client, or legal advice or opinions of the attorney." *Id.* (quoting *Schenet v. Anderson*, 678 F. Supp. 1280, 1281 (E.D. Mich. 1988)). The burden of establishing the existence of the privilege rests with the party asserting it. *United States v. Dakota*, 197 F.3d 821, 825 (6th Cir. 1999).

## 1. KFLD Was Not Acting in Its Capacity as Professional Legal Adviser

BAE argues that the attorney-client privilege does not shield the underlying basis for Ms. Jones' decision because KFLD was not acting as a legal adviser when it curated the relevant facts and then funneled them to Ms. Jones. The Court agrees. The party attempting to invoke the attorney-client privilege must show that counsel was acting in his or her capacity as a "professional legal adviser." *Reed*, 134 F.3d at 355-56; *see also United States v. Bartone*, 400 F.2d 459, 461 (6th Cir. 1968) ("The mere fact that a person is an attorney does not render as privileged everything he does for and with a client."). When a lawyer provides non-legal services, such as supplying business advice, the privilege does not attach. *See Neuberger Berman Real Estate Income Fund, Inc. v. Lola*, 230 F.R.D. 398, 422 (D. Md. 2005); *Neuder v. Battelle Pac. Nw. Nat'l Lab.*, 194 F.R.D. 289, 292 (D.D.C. 2000); *see also In re Lindsey*, 158 F.3d 1263, 1270 (D.C. Cir. 1998) ("[Attorney's] advice on political, strategic, or policy issues, valuable as it may have been, would not be shielded from disclosure by the attorney-client privilege.").

Consistent with that principle, many courts have decided that the privilege does not apply when lawyers either act as fact-finders or provide information without the purpose of providing legal advice. *See, e.g.*, *Michigan First Credit Union v. Cumis Ins. Soc., Inc.*, 2006 WL 1851018, at *2 (E.D. Mich. July 5, 2006) (declining to apply the privilege to communications reflecting attorney's work investigating an insurance claim); *Argo Systems FZE v. Liberty Ins. PTE, Ltd.*, 2005 WL 1355060, at *3 (S.D. Ala. June 7, 2005) (permitting deposition of attorney where counsel and his law firm performed services in the nature of a claims investigator); *Lewis v. United States*, 2004 WL 3203121, at *3 (W.D. Tenn. Dec. 7, 2004) (rejecting privilege claim where attorney's activities "centered around providing the

Board of Directors with information about the alleged tax deficiency"), *aff'd*, 2005 WL 1926655 (W.D. Tenn. June 20, 2005); *Diamond v. City of Mobile*, 86 F.R.D. 324, 328 (S.D. Ala. Jan. 16, 1978) (holding that privilege did not cover attorney's communications where "[t]he purpose of his activities was not to provide legal advice or assistance to the persons questioned, but rather to provide his client the City of Mobile with information relating to the alleged indiscretions within the Mobile Police Department").

One such decision is particularly instructive here. In *Gulf Grp. Gen. Enters. Co. v. United States*, the plaintiff was challenging an army contracting officer's final decision on contracts that the Army had terminated. 98 Fed. Cl. 647 (2011). The parties disputed whether the plaintiff could elicit testimony from a government lawyer who had served in two capacities: "one to prepare a litigation report for the Department of Justice in support of the litigation, and the other to provide facts to assist the contracting officer prepare his contracting officer's final decisions." *Id.* at 652. The plaintiff sought the lawyer's testimony because it had the potential to illuminate the Army's "apparently shifting basis" for why it had terminated the contracts, and the Government objected on the basis of attorney-client privilege. *Id.* at 651. The Court of Federal Claims, which frequently hears cases involving government contracts, rejected the privilege claim, concluding that the "plaintiff properly should be able to explore" the attorney's provision of facts to the contracting officer. *Id.* at 652. This was true even though the testimony might prove "duplicative." *Id.* at 651.

*Gulf Grp.* shares many parallels with this case. Here, KFLD "provide[d] facts to assist the contracting officer prepare" her decision rescinding the Army's demand for payment, and BAE seeks discovery to clarify the Army's "apparently shifting basis" for its decisions. While the Government attempts to distinguish *Gulf Grp.* on the ground that KFLD simply

9

"analyzed evidence discovered through litigation, and not through a 'fact investigation' or 'fact-finding process,'" the Court sees no meaningful distinction between the cases. (Dkt. 47, at 15.) The attorney in *Gulf Grp.* characterized her fact-finding role as "helping Mr. Joseph Libbey, a Contracting Officer, prepare the court directed final decisions." 98 Fed. Cl. at 650. Here, the Government has characterized KFLD's work in similar terms, stating: (1) that KFLD provided facts to Ms. Jones "to guide her understanding of the events"; and (2) that her decision was "[b]ased on the advice and information she received." (Dkt. 47, at 4-5.) That seems a lot like "helping" a contracting officer prepare a decision, so the Court rejects the Government's attempt to distinguish *Gulf Grp.*

For similar reasons, the Court also rejects the Government's reliance on *Alexander v. FBI*, 192 F.R.D. 32 (D.D.C. 2000). There, the court held that facts communicated by a lawyer to a client before that client's deposition were privileged because revealing those facts would be "'tantamount to revealing the substance of what was discussed with counsel' in furtherance of legal services." *Id.* at 35. That holding is inapposite here because, while preparing a client for a deposition is one of the quintessential "legal services" that attorneys offer, supplying the factual basis for a contracting officer's decision is not. As to the other case relied on by the Government, *Bergstrom, Inc. v. Glacier Bay, Inc.*, it is even less relevant. 2010 WL 257253 (N.D. Ill. Jan. 22, 2010). The issue there was whether the court should compel discovery reflecting information that the client communicated to his attorney. *See id.* at *4. Here, BAE does not seek facts that Ms. Jones communicated to KFLD; it seeks the information offered by KFLD, which Ms. Jones adopted as the basis for her decision. *Bergstrom* is therefore inapposite.

The Court further rejects the Government's argument that, because BAE has access to the same information that KFLD reviewed, the Government is not withholding any facts. First, that argument misunderstands the point of BAE's motion to compel; Ms. Jones' assessment of those facts and the conclusions that she drew from her communications with KFLD are themselves discoverable facts. Second, it ignores the well-established rule that "[c]lients cannot refuse to disclose facts which their attorneys conveyed to them and which the attorneys obtained from independent sources." *Protective Nat'l Ins. Co. of Omaha v. Commonwealth Ins. Co.*, 137 F.R.D. 267, 278 (D. Neb. 1989) (quoting *Sedco Int'l, S.A. v. Cory*, 683 F.2d 1201, 1205 (8th Cir. 1982)).

Given the above, the Court reaches the same conclusion as the court in *Gulf Grp.* Because the Government has not established that KFLD was acting in its capacity as legal adviser when it supplied the facts that formed the basis of Ms. Jones' decision, the attorney-client privilege does not protect the discovery sought by BAE. *See Amway Corp. v. Proctor & Gamble Co.*, 2001 WL 1818698, at *5 (W.D. Mich. Apr. 3, 2001) ("[F]or the privilege to be applicable, the proponent must demonstrate that the lawyer has acted in a legal capacity rather than in any of the other functions that legally trained individuals perform in our society."). The factual basis for Ms. Jones' decision would have been discoverable had she reviewed the facts herself, and the Court will not permit the Government to "construct a 'shroud of secrecy'" around what would have been an "otherwise ordinary" fact review. *Mich. First Credit Union*, 2006 WL 1851018, at *2.

### 2. The Rescission Was Not A Privileged and Protected Litigation Decision

While the aforementioned provides sufficient grounds for rejecting the Government's privilege claims, an alternative reason emerges from cases holding that the attorney-client

privilege does not cover communications adopted as or incorporated into final agency actions or decisions. *See, e.g.*, *Nat'l Council of La Raza v. DOJ*, 411 F.3d 350, 360 (2d Cir. 2005) ("[T]he attorney-client privilege may not be invoked to protect a document adopted as, or incorporated by reference into, an agency's policy."); *General Elec. Co. v. Johnson*, 2006 WL 2616187, at *15 (D.D.C. Sept. 12, 2006) (holding that privilege does not protect materials that "amount[] to an affirmative determination by the agency that the party is legally responsible for a specific violation, and assigns certain attendant responsibilities and penalties"); *Falcone v. IRS*, 479 F. Supp. 985, 990 (E.D. Mich. 1979) ("[I]t is clear that the purpose of the privilege is not to protect communications which are statements of policy and interpretations adopted by the agency.").

The Government attempts to distinguish those cases on the ground that "[n]either a contracting officer's final decision, nor the rescission of one, has the force and effect of law or represents a statement of what the law is or what an agency's policy is." (Dkt. 47, at 25.) In the Government's view, the rescission is a "privileged and protected litigation decision," comparable to a private party's decision to dismiss litigation voluntarily. (*Id.*) The Court disagrees, finding that the rescission more closely resembles an agency's rescission of a decision reached through administrative adjudication, the underlying basis of which would not be privileged. *See General Elec.*, 2006 WL 2616187, at *16 ("[T]he privileged role of an attorney does not encompass the establishment of broad agency policy, adjudication of responsibilities, assessment of penalties, or other functions that create the law.").

Under the statute governing public contract disputes, "[e]ach claim by the Federal Government against a contractor relating to a contract shall be the subject of a written decision by the contracting officer," and "[t]he contracting officer's decision shall state the

reasons for the decision reached[.]" 41 U.S.C. § 7203(a)(3), (e). The applicable regulations further require that "[t]he contracting officer [] must render a decision that is fair and impartial." *Fireman's Fund Ins. Co. v. United States*, 92 Fed. Cl. 598, 696 (2010) (citing Federal Acquisition Regulation (FAR) 1.602-2). In light of that responsibility to evaluate and issue decisions on the claims of disputing parties, contracting officers appear to serve in a "quasi-judicial capacity," which is a characterization that the ASBCA has also employed. *Appeal of Space Age Eng'g, Inc.*, 82-1 B.C.A. (CCH) ¶ 15766 (ASBCA No. 26028, 1982); *see also Fireman's Fund Ins.*, 92 Fed. Cl. at 696 (holding that a contracting officer may consult advisers but must ultimately "put his own mind to the problems and render his own decisions").

It would thus defy logic for the Court to conclude that Ms. Jones is more like a private litigant than an agency adjudicator. When she rescinded the final decision and canceled the $56 million debt owed by BAE, it functioned effectively like an agency's rescission of a decision reached through administrative adjudication. Accordingly, when Ms. Jones adopted KFLD's assessment of the facts as the basis for the rescission, any possible attorney-client privilege over that assessment evaporated. *See General Elec.*, 2006 WL 2616187, at *16 ("[W]hen an attorney is acting more in the nature of a business advisor, legislator, adjudicator, or regulator, the attorney-client privilege generally does not apply."); *see also Ford Motor Co. v. U.S. Customs & Border Prot.*, 2008 WL 4899402, at *18 (E.D. Mich. Aug. 1, 2008) ("In the context of federal agency communications, where a counsel's opinion or recommendation is analogous to a final disposition that has operative and controlling effect over the decision-making process, such opinions must be disclosed."), *adopted in relevant part*, 2008 WL 4899401 (E.D. Mich. Nov. 12, 2008).

## B. Work Product Doctrine Does Not Apply

The work product doctrine "is distinct from and broader than the attorney-client privilege." *In re Columbia*, 293 F.3d at 294 (citation omitted) "The doctrine is designed to allow an attorney to 'assemble information, sift what he considers to be relevant from the irrelevant facts, prepare his legal theories and plan his strategy without undue and needless interference ... to promote justice and to protect [his] clients' interests.'" *Id.* (quoting *Hickman v. Taylor*, 329 U.S. 495, 510 (1947)). Under the doctrine, "[o]rdinarily, a party may not discover documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative[.]" Fed. R. Civ. P. 26(b)(3)(A). The doctrine covers the work of government attorneys. *NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 153-54 (1975).

"A party asserting the work product privilege bears the burden of establishing that the documents he or she seeks to protect were prepared 'in anticipation of litigation.'" *United States v. Roxworthy*, 457 F.3d 590, 593 (6th Cir. 2006). In the Sixth Circuit, materials were prepared in "anticipation of litigation" if they were prepared "because of" litigation. *Id.* A document was prepared "because of" litigation if it was (1) created because of a party's subjective anticipation of litigation, as contrasted with an ordinary business purpose, and (2) if subjective anticipation of litigation was objectively reasonable. *Id.* Under that standard, "[i]t is clear that documents prepared in the ordinary course of business, or pursuant to public requirements unrelated to litigation, or for other nonlitigation purposes, are not covered by the work product privilege." *Id.*

Courts have identified two types of work product, which are entitled to different degrees of protection. *In re Antitrust Grand Jury*, 805 F.2d 155, 163 (6th Cir. 1986). The

first is "fact" work product, which is "written or oral information transmitted to the attorney and recorded as conveyed by the client." *Id.* "Fact" work product may be obtained upon a showing of substantial need and inability to otherwise obtain without material hardship. *In re Columbia*, 293 F.3d at 294. The second is "opinion" work product, which is "any material reflecting the attorney's mental impressions, opinions, conclusions, judgments or legal theories." *In re Antitrust Grand Jury*, 805 F.2d at 163 (citations omitted); *see also* Fed. R. Civ. P. 26(b)(3)(B). "Opinion" work product may be obtained only upon waiver. *In re Columbia*, 293 F.3d at 294.

BAE argues that the discovery it seeks does not qualify as either type of work product because it was not prepared in "anticipation of litigation." Specifically, BAE contends: "The documents and communications at issue do not qualify as work product because they were 'prepared in the ordinary course of business' and were made in response to 'public requirements unrelated to litigation.'" (Dkt. 38, at 30.) The Government responds that "[t]he dispositive question is not whether a document was created for some 'public requirement' but whether it was created in anticipation of litigation." (Dkt. 47, at 26.) However, as quoted above, the Sixth Circuit has stated that materials were not created in anticipation of litigation if they were created "in the ordinary course of business, or pursuant to public requirements unrelated to litigation, or for other nonlitigation purposes." *Roxworthy*, 457 F.3d at 593. Thus, the Government's argument misses the mark.

The Government next maintains that the materials were not created in the ordinary course of business or pursuant to a public requirement because "Ms. Jones had no duty to act on a claim that was already the subject of a contracting officer's final decision." (Dkt. 47, at 26.) But the ASBCA has issued decisions that persuade the Court otherwise. In

*Appeal of Space Age Eng'g, Inc.*, the ASBCA stated the following regarding a contracting officer's obligation to correct a final decision:

> In our judgment the contracting officer not only is permitted to correct an erroneous 'final decision' but has an obligation to do so. The contracting officer, when considering claims, serves in a quasi-judicial capacity. He has an obligation to consider all of the relevant and material evidence and to make findings of fact, and to apply the law to the facts found and render a fair, impartial and informed judgment. When a judgment is rendered which is not a fair, impartial and informed one, he has a duty to correct it.

82-1 B.C.A. (CCH) ¶ 15766 (ASBCA No. 26028, 1982). Then, in a later case, the ASBCA found that those same considerations applied when a contracting officer rescinded a final decision. *Appeal of Daniels & Shanklin Const. Co.*, 89-3 B.C.A. (CCH) ¶ 22060 (ASBCA No. 37102, 1989). The Court accordingly rejects the Government's argument that Ms. Jones had no duty to act on a previously issued final decision.

In rescinding the final decision and demand letter, Ms. Jones was acting "pursuant to public requirements unrelated to litigation" or in the contracting officer's "ordinary course of business." *Roxworthy*, 457 F.3d at 93. As a result, the Court finds that the fact assessment adopted by Ms. Jones was not prepared "because of" litigation, and the discovery sought by BAE does not fall within the purview of the work product doctrine. *See* Judge Advocate General's School Contract Attorney's Deskbook at 22-25, § F.2 (2014) (citing the ASBCA precedent discussing a contracting officer's obligation to reconsider erroneous final decisions); *see also Weston/Bean Joint Venture v. United States*, 128 Fed. Cl. 1, 5 (2014) (finding that "documents addressed to the validity of the plaintiff's administrative claims would have been created whether or not the claims ultimately ended up in litigation and so were not prepared 'because of' anticipated litigation"); *Gulf Grp.*, 98 Fed. Cl. at 652 (finding that the work product doctrine did not cover an attorney's work in

helping a contracting officer prepare his final decisions); *Northrop Grumman Corp. v. United States*, 80 Fed. Cl. 651, 654-55 (2008) (holding that "papers were not created because of, or primarily in anticipation of litigation" where "the primary motivational purpose for the creation of [the documents] was for use by the contracting officer ... to review plaintiff's complex claims and to prepare his contracting officer's final decision.").

## IV. Conclusion

For the foregoing reasons, the Court concludes that neither the attorney-client privilege nor work product doctrine covers the discovery sought by BAE. Therefore, BAE's motion to compel is GRANTED. The Government has thirty (30) days from the issuance of this order to respond substantively to BAE's discovery requests regarding the facts, reasons, opinions, and analysis underlying Ms. Jones' decision to rescind the demand letter and final decision.

SO ORDERED.

s/Nancy G. Edmunds
Nancy G. Edmunds
United States District Judge

Dated:  April 25, 2017

I hereby certify that a copy of the foregoing document was served upon counsel of record on April 25, 2017, by electronic and/or ordinary mail.

s/Kelly Winslow for
Carol J. Bethel, Case Manager